**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

No. 96-20592

_____


In the Matter of: TRANS MARKETING HOUSTON, INC.,

                                        Debtor,


JOHN M. WEAVER,
LIQUIDATING TRUSTEE,


                              Appellee/Cross Appellant,


                          versus


AQUILA ENERGY MARKETING
CORPORATION,


                              Appellant/Cross Appellee.

_____

Appeal From the United States District Court
for the Southern District of Texas
(H-95-4785)

_____

May 30, 1997


Before GARWOOD, WIENER, and DEMOSS, Circuit Judges.

WIENER, Circuit Judge:[*]


    In this appeal, which arises from a preference avoidance

---

    [*] Pursuant to Local Rule 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in Local Rule 47.5.4.

action in bankruptcy, both Appellant/Cross Appellee Aquila Energy Marketing Corporation ("Aquila") and Appellee/Cross Appellant John Weaver, Liquidating Trustee of Trans Marketing Houston, Inc. ("the Trustee") seek reversal of a decision of the district court that reversed the bankruptcy court. We affirm the district court, holding that (1) Aquila's service of a garnishment writ constituted a preferential transfer under 11 U.S.C. § 547(b), and (2) the Trustee's avoidance of that writ benefits the estate within the meaning of 11 U.S.C. § 550(a).

I

**FACTS AND PROCEEDINGS**

The Debtor, Trans Marketing Houston, Inc. ("TMHI" or "the debtor"), was engaged in the petrochemical trading business. Beginning in 1986, TMHI's operations were largely financed by Banque Paribas, a French bank. During 1992 and 1993, Banque Paribas extended $65 million in credit to TMHI through an ongoing financing arrangement. In January 1993, the bank advanced an additional $3 million as a working capital loan for general corporate purposes. Banque Paribas held a security interest in essentially all of TMHI's assets —— cash, inventory, accounts receivable, goods, furniture, equipment and notes receivable —— including among other things funds deposited in two accounts with Banque Paribas. Significantly, these two accounts were contractually subject to Banque Paribas' dominion and control:

2

TMHI had no right to withdraw the funds on deposit until all of its debts to Banque Paribas were paid.

Aquila sold natural gas to TMHI on open account in early 1992. TMHI failed to pay for the gas, so on March 17, 1993, Aquila sued in Texas state court to collect approximately $1.83 million. (Aquila later amended its petition to assert a claim of approximately $3.4 million.) A week later, on March 23, 1993, Aquila filed an application for a prejudgment writ of garnishment against TMHI in the amount of $1,832,538.12. As TMHI had funds on deposit at Banque Paribas in excess of the garnished amount, Aquila had the writ served on the bank on March 25, 1993.

A week after that, on April 1, 1993, three significant events transpired. First, the state district court denied TMHI's motion to dissolve the writ. Second, despite never having declared any of TMHI's loans to be in default and never having accelerated any of TMHI's loans, Banque Paribas "offset" the debts TMHI owed it against all of TMHI's approximately $4 million in funds on deposit there, including the funds putatively garnished by Aquila. Third, TMHI was advised by Banque Paribas that it would not finance any future operations and would only consider making a short term debtor-in-possession loan for the limited purpose of facilitating the unwinding of TMHI's business. The loss of Banque Paribas' financing left TMHI powerless to continue operations. On April 16, 1993, it filed a chapter 11 bankruptcy petition.

Following the commencement of the bankruptcy case, Aquila and

Banque Paribas each timely filed a proof of claim. Aquila asserted a secured claim of approximately $1.83 million (the amount of the garnishment writ) and an unsecured claim of approximately $1.6 million. Banque Paribas asserted a secured claim of approximately $22 million. Although other documentary evidence submitted to the bankruptcy court indicated that Banque Paribas had a secured claim of approximately $18.7 million on the date of the bankruptcy petition, the court ultimately found that as of March 31, 1993 (the day before the state court denied TMHI's motion to dissolve the garnishment writ and also the day before Banque Paribas' setoff) Banque Paribas held a secured claim of approximately $22 million, which included a contingent claim of $1.83 million for the amount garnished by Aquila. In addition, even though the Trustee asserted that the value of TMHI's assets claimed by Banque Paribas as collateral was approximately $34 million on the date of the bankruptcy petition, the bankruptcy court found that as of March 31, 1993 TMHI owned approximately $48.7 million in assets of which all but some $600,000 were claimed by Banque Paribas as its collateral.[1] In short, whether measured by its own assertions or by the findings of the bankruptcy court, Banque Paribas was

---

[1] During trial in the bankruptcy court, the Trustee asserted, based upon a liquidation analysis of TMHI's assets, that the value of those assets was approximately $34 million as of April 15, 1993. The bankruptcy court disallowed the Trustee's liquidation adjustments, however, and added back to asset values the values of prepaid assets and expenses, as well as the full book value of TMHI's furniture, fixtures, and equipment.

4

substantially oversecured both at the time of its setoff against TMHI's funds on deposit and at the time the debtor's bankruptcy petition was filed.

The instant adversary proceeding was initiated by TMHI, as debtor-in-possession, to avoid Aquila's state court garnishment writ as a preference under 11 U.S.C. § 547. After confirmation of a Liquidating Plan of Reorganization (the Plan), the Trustee was substituted for TMHI as plaintiff in the avoidance action.

The Plan contained several provisions relevant to this avoidance action. First, it enjoined Aquila from prosecuting the state court garnishment action against TMHI and Banque Paribas, as well as "any other action arising therefrom or in connection therewith" during the pendency of this avoidance action. Second, it released Banque Paribas from any liabilities to TMHI or the estate, including any arising from its April 1, 1993, setoff of TMHI's funds on deposit. Third, it obligated the Trustee to continue to prosecute this avoidance action against Aquila and specified that if the Trustee abandoned the action or settled with Aquila without Banque Paribas' written consent, the bank's allowed secured claim would be increased by $1.83 million. Finally, it provided that in the event Banque Paribas should incur any financial obligation to Aquila by virtue of Aquila's continued prosecution of a state court action based on the bank's setoff of the garnished funds, Banque Paribas would acquire an additional unsecured claim in the amount of its loss, not to exceed $1.83

5

million, plus attorneys' fees not to exceed $200,000; Aquila's claim, in turn, would be reduced by the amount of any payment it might receive from Banque Paribas.

Aquila objected to confirmation, complaining that (1) the Plan does not generally provide a fair settlement for the estate, (2) the injunction prohibiting Aquila from pursuing Banque Paribas in state court is improper, and (3) the Plan does not treat Aquila as a secured creditor. Aquila's appeals of the confirmation of the Plan were dismissed by the district court and this court solely on the grounds of mootness, so the merits of Aquila's objections to confirmation were never reached on appeal.

In the instant avoidance action, which the Trustee — pursuant to the Plan — continued to prosecute against Aquila, the bankruptcy court acknowledged the undisputed fact that Aquila was a creditor to whom TMHI owed an antecedent debt,[2] and determined, after extensive fact finding, that TMHI was insolvent at the time Aquila's garnishment writ was served on Banque Paribas.[3] The bankruptcy court ultimately found, however, that as Banque Paribas had setoff TMHI's account against the unpaid balance of its loans after Aquila's writ of garnishment was served but before the bankruptcy petition was filed, Aquila had not received a benefit as a creditor of TMHI, and thus would not receive more than it would

---

[2] See 11 U.S.C. § 547(b)(1) & (2).

[3] See 11 U.S.C. § 547(b)(3).

have received if this were a hypothetical chapter 7 case and the garnishment writ had never been served.[4] Therefore, concluded the court, Aquila's writ could not be avoided as a preferential transfer under § 547(b).

In addition, the bankruptcy court ruled that the Trustee had failed to demonstrate, as required under 11 U.S.C. § 550(a), that avoidance of the writ would produce some "benefit to the estate," i.e., to unsecured creditors. This is so, reasoned the court, because (1) it was Banque Paribas' pre-petition set-off — not Aquila's garnishment — that removed the erstwhile garnished funds from the estate, leaving as the only real dispute the one between Aquila and Banque Paribas, two non-debtors; and (2) under the Plan, either Aquila or Banque Paribas — but not both — will have an unsecured claim for $1.83 million of those funds. The court expressed the opinion that any other purported benefit — such as a speculative, de minimis savings of $200,000 in attorneys fees that Banque Paribas might run up against the estate as an unsecured claim in defending a state court action brought by Aquila based on the setoff — would flow from the "machinations of the confirmation plan" and not from a successful prosecution of this avoidance action.

In the district court, each party appealed different elements

---

[4] See 11 U.S.C. § 547(b)(5).

of the bankruptcy court's decision.[5]  The district court first reversed the bankruptcy court's ruling that a preferential transfer had not occurred under § 547(b).  It reached this initial conclusion by ruling, as a threshold matter, that notwithstanding the bank's pre-petition setoff a transfer of property did in fact take place — i.e., "a garnishor's interest" was acquired — at the moment the writ of garnishment was served, as the "garnishor's status [was] converted from unsecured creditor to secured creditor."[6]  The district court found that the resulting "shift in positions" from completely unsecured to potentially secured creditor, effectuated by service of the writ, benefits Aquila and may allow it to receive more (a greater percentage of its claim) than it otherwise would have if the transfer had not occurred, thus

---

[5] The district court opinion was published <u>sub nom</u> <u>Weaver v. Aquila Energy Marketing Corp.</u>, 196 B.R. 945 (S.D. Tex. 1996).

[6] <u>Id.</u> at 953.  In reaching this conclusion, the court relied primarily on this court's holding in <u>In re Latham</u>, 823 F.2d 108, 110 (5th Cir. 1987) (a transfer of property by garnishment occurs at the moment of service) and declined to follow a recent Seventh Circuit decision that calls our holding in <u>In re Latham</u> into doubt. <u>See</u> <u>In re Freedom Group</u>, 50 F.3d 408, 412 (7th Cir. 1995) (garnishment does not transfer money or other property, for purposes of § 547(b), until a final order of garnishment is issued).  If we were to apply <u>In re Freedom Group</u>'s rule to the facts of this case, we would be compelled to conclude that there never was a completed transfer of money or other property during the 90 day pre-petition preferential transfer period. Consequently, the Trustee would have nothing to avoid, and Aquila would not have a secured claim.  We are not prepared to go as far in this appeal as did the Seventh Circuit in <u>In re Freedom Group</u> regarding the intricacies of applicable state garnishment law.  It suffices that we need not do so, and that we need not dwell long on that case or distinguish it from the one before us.

satisfying § 547(b)(5).

Although the district court went on to agree with the bankruptcy court that the Trustee must also satisfy the "benefit to the estate" test under § 550(a) if the Trustee is to avoid the preferential transfer represented by the garnishment writ,[7] it ultimately reversed the bankruptcy court's finding that the avoidance action does not benefit the estate. The district court concluded that (1) even a relatively minor benefit to the estate — such as the Plan's provision for a potential savings of up to $200,000 in attorneys' fees that would be charged to the estate should this avoidance action spare Banque Paribas from having to defend a state court action arising from its setoff — cannot be disregarded, and (2) the bankruptcy court itself had approved the Plan, indicating the presence of some "benefit to the estate" in the Plan's provision obligating the Trustee to prosecute this action.[8]

Finally, the district court rejected the five propositions raised by Aquila on cross-appeal. First, it affirmed the bankruptcy court's factual finding that TMHI was insolvent on the date the writ of garnishment was served. Second, it rejected a judicial estoppel claim (which is not before this court). Third, the court rejected Aquila's argument that the bankruptcy court

---

[7] Id. at 954–55.

[8] Id. at 955–57.

erred by failing to dissolve the Plan, at least to the extent that the Plan prohibits Aquila from suing Bank Paribas, noting, inter alia, that the stay was only temporary and that only Aquila's writ of garnishment claim, not its conversion cause of action against the bank, is subject to the bankruptcy court's jurisdiction.[9] Fourth, it rejected a standing claim (which is not before this court). Fifth, the district court affirmed the bankruptcy court's denial of Aquila's request for a jury trial.

## II

## ANALYSIS

### A. Standard of Review

We review a bankruptcy court's findings of fact under a clearly erroneous standard and decide issues of law de novo.[10] In this appeal, the only factual findings subject to review for clear error concern whether the debtor was insolvent at the time of the purported transfer. The remainder of our review focuses on legal issues and is therefore entirely plenary.

### B. Preferential Transfer under § 547(b)

Section 547(b) of the Bankruptcy Code empowers a trustee to avoid "any transfer of an interest of the debtor in property" to a

---

[9] This latter assertion is facially contradicted by the Plan's provision enjoining not only the state court garnishment action against TMHI and Banque Paribas, but also "any other action arising therefrom or in connection therewith."

[10] In re McDaniel, 70 F.3d 841, 842-43 (5th Cir. 1995).

non-insider only if each of the following five conditions is present: The transfer was made (1) to or for the benefit of a creditor; (2) for or on account of an antecedent debt; (3) while the debtor was insolvent; (4) on or within 90 days preceding the filing of the bankruptcy petition; (5) to enable the creditor to receive more than he otherwise would have if the case were a hypothetical chapter 7 proceeding and the transfer had not been made.[11] In this appeal, Aquila first argues that the district court erred in finding that conditions (3) and (5) had been established by the Trustee.

In regard to whether TMHI as debtor was insolvent at the time when the purported preferential transfer occurred, Aquila's principal contention is that the bankruptcy court erred in not assigning a premium or "going concern" value to TMHI as of March 25, 1993, the date the garnishment writ was served. As the bankruptcy court observed, however, TMHI was already in a "state of wreck" even before Banque Paribas exercised its setoff against TMHI's accounts and cut off further financing. That in turn made it improbable that any person or entity would pay a premium to purchase TMHI. Moreover, the bankruptcy court's findings on the state of TMHI's financial condition are detailed and well reasoned. The court listened to extensive testimony from financial experts and gave Aquila the benefit of the doubt on a number of accounting

---

[11] See 11 U.S.C. § 547(b).

disputes, but still found that TMHI was insolvent on the date of service of the garnishment writ. Like the district court, we are convinced that the bankruptcy court did not clearly err in determining that TMHI was insolvent on the date of service of the garnishment writ.

The issue of insolvency aside, § 547(b)'s fifth condition —— that a transfer occurred that enables Aquila to receive more than it would have if no transfer had occurred and this had been a hypothetical chapter 7 case —— presents a point that has consistently been one of the two principal thrusts of Aquila's argument in this litigation. Indeed, the bankruptcy court agreed with the gist of Aquila's basic contention that it had not received and never would receive more from the debtor's estate by virtue of the garnishment writ than it would have received had the writ not been served, because, given Banque Paribas's pre-petition set-off, the debtor's estate no longer contained any property to which Aquila's garnishment lien could have attached at the commencement of the bankruptcy case. In other words, by virtue of its setoff, Banque Paribas, not the debtor, controlled or owned the funds to which Aquila's garnishment writ purportedly attached at the time of the commencement of the bankruptcy case. It follows, Aquila has argued and the bankruptcy court has agreed, that any funds Aquila might receive as a result of the writ will come from Banque Paribas, a non-debtor, not from the estate; and, therefore, the Trustee cannot demonstrate the presence of the fifth element of

12

§ 547(b).

The Trustee responds to this contention with alternative arguments. First and foremost, he asserts that Banque Paribas' pre-petition setoff of the debtor's funds on deposit was void because it violated Texas' garnishment law. In this vein, the Trustee makes several observations about Texas garnishment law. First, he notes that service of a garnishment writ effectively impounds garnished funds in the hands of a garnishee and thus turns the garnishee into an officer of or receiver for the court.[12] The Trustee next observes that Tex. Civ. Prac. & Rem. Code § 63.003 provides:

> (a) After service of a writ of garnishment, the garnishee may not deliver any effects or pay any debt to the defendant . . .

> (b) A payment, delivery, sale, or transfer made in violation of Subsection (a) is void as to the amount of the debt, effects, shares or interest necessary to satisfy the plaintiff's demands.

Finally, he points out simply that, in a garnishment proceeding, a garnishor may attack transactions between debtors and garnishees.[13] Accordingly, reasons the Trustee, even though Banque Paribas may

---

[12] See Chandler v. El Paso Nat'l Bank, 589 S.W.2d 832, 836 (Tex. Civ. App.--El Paso 1979) (no writ); Intercontinental Terminals v. Hollywood Marine, 630 S.W.2d 861, 863 (Tex. Civ. App.-- Houston [1st Dist.] 1982) (writ ref'd n.r.e.).

[13] See Englert v. Englert, 881 S.W.2d 517, 518 (Tex. App.-- Amarillo 1994) (no writ); see also Cohen v. Advance Imports, Inc., 597 S.W.2d 449, 452 (Tex. Civ. App.--Dallas 1980) (writ ref'd n.r.e.) (after service of garnishment writ, garnishee acts at his peril in delivering goods or paying money to defendant in main suit and, if he does so, may be liable to garnishor for conversion).

13

have had the right to setoff the funds in TMHI's account, the bank's <u>exercise</u> of that right <u>after service of the garnishment writ</u> contravened § 63.003(a)&(b) and was otherwise unlawful to the extent of the amount of the garnishment writ. As the set-off was void, the Trustee continues, Banque Paribas still owed the deposited funds to TMHI's bankruptcy estate, and the estate, in turn, retained a property interest in those funds, subject to the writ of garnishment. It follows, insists the Trustee, that Aquila's garnishment writ still provided it with a viable lien against the debtor's property (the garnished funds) at the time that the bankruptcy petition was filed, albeit that property was in the hands of Banque Paribas. Thus, the Trustee concludes, Aquila's garnishment writ still has value and, if not avoided, will have the potentiality of permitting Aquila to receive more than it would if the writ not been served and this were a hypothetical chapter 7 case. As such, the crucial fifth element for avoiding the garnishment writ as a preferential transfer pursuant to § 547(b) is satisfied.[14]

---

[14] Indisputably, transfers that do in fact change the status of a creditor from an unsecured to a secured one are preferential, when, as here, evidence indicates that no unsecured creditor would receive full payment on liquidation. See <u>In re Crisswell</u>, 102 F.3d 1411, 1415 (5th Cir. 1997) ("the fixing of a non-statutory judicial lien . . . is avoidable as a preferential 'transfer'"); <u>In re Hagen</u>, 922 F.2d 742, 745 (11th Cir. 1991) ("the creation of a lien in favor of a previously unsecured creditor is a transfer" that "satisfies the fifth element of Section 547(b)"); <u>Porter v. Yukon Nat'l Bank</u>, 866 F.2d 355, 359 (10th Cir. 1989)(change in priority status is sufficient to establish the last element of a preferential transfer); <u>In re Enserv Co., Inc.</u>, 64 B.R. 519, 521

14

Although we harbor serious doubts about the validity of Trustee's claim that Banque Paribas' setoff was void or in any way in contravention of Texas law,[15] we must acknowledge that Aquila has espoused the same position in supplemental briefing requested by this court, asserting that Banque Paribas' setoff was improper and

---

(B.A.P. 9th Cir. 1986), aff'd, 813 F.2d 1230 (9th Cir. 1987) (levy on bank account to satisfy judgment is transfer that can be a preference).

[15] We observe, as Banque Paribas has argued in its post-argument amicus brief, that a garnishor can only enforce against a bank, as garnishee, such rights as the debtor himself might have against that bank. See Rome Industries, Inc. v. Instel Southwest, 683 S.W.2d 777, 779 (Tex. App.--Houston (14th Dist.) 1984) (writ ref'd n.r.e.); Bullock v. Foster Cathead Co., 631 S.W.2d 208, 211 (Tex. App.--Corpus Christi 1982) (no writ); Beggs v. Fite, 106 S.W.2d 1039, 1042 (Tex. 1937). In other words, the garnishor merely steps into the shoes of its debtor and can never stand in a better position than the debtor relative to the funds on deposit. Farmers & Merchants State Bank of Teague v. Setzer, 185 S.W. 596, 597 (Tex. Civ. App.--Dallas 1916) (no writ). Relying on this fundamental principle of garnishment law, Texas courts have expressly held on several occasions that when a bank possesses a right of set-off against funds garnished by a creditor of a depositor, the bank may immediately apply the funds on deposit to the depositor's indebtedness then due to the bank. See id.; Gill v. Oak Cliff Bank & Trust Co., 331 S.W.2d 832, 834 (Tex. Civ. App.--Amarillo 1959) (no writ); Sunbelt Savings F.S.B. v. Bank One, Texas N.A., 816 S.W.2d 106, 110 (Tex. App.--Dallas 1991), rev'd on other grounds, 824 S.W.2d 557 (Tex. 1992) (set-off clearly available as a defense to garnishment action if bank can establish elements). In fact, a bank's failure so to act may even be considered a waiver of its set-off rights. Holt's Sporting Goods Co. of Lubbock v. American Nat'l Bank of Amarillo, 400 S.W.2d 943, 945 (Tex. Civ. App.--Amarillo 1966) (writ dism'd). Finally, a bank will have a right to setoff a debtor's indebtedness against funds on deposit when (1) the debt matures, (2) the debtor is insolvent, or (3) the bank has a contractual right to accelerate the debt. Baldwin v. Peoples Nat'l Bank of Tyler, 327 S.W.2d 616, 619-620 (Tex. Civ. App.--Texarkana 1959) (no writ). In this instance conditions (2) and (3) were arguably present, so it appears that Banque Paribas' set-off action may well have been justified and lawful.

in contravention of Aquila's superior rights to the deposited funds by virtue of the garnishment writ.[16] We also recognize that Aquila has no choice but to champion this position if it hopes to maintain a basis for the conversion claim it will pursue in state court once the injunction issued under the Plan is lifted.[17] The identicalness of the Trustee's and Aquila's conclusions on this issue leads us to conclude, for purposes of this avoidance action,[18] that the garnishment writ (1) created a lien at the moment it was served

---

[16] Aquila argues principally that Banque Paribas' setoff was improper under Bandy v. First State Bank Overton, 835 S.W.2d 609, (Tex. 1992), in which the Texas Supreme Court (1) reiterated the general rule that a bank may equitably setoff a debtor's deposited funds against a debtor's indebtedness when either the debt has matured or the debtor is insolvent, Id. at 619, (2) declared that "a debtor is not insolvent, as to a particular creditor, if the debtor 'holds property against which the creditor may enforce a lien for the payment of the debt,'" Id. at 621 (citing Smith v. Ojerholm, 53 S.W. 341, 342 (Tex. 1889)), but (3) ultimately held that a bank's right to setoff an unmatured claim against a deceased customer's deposits exists whether or not the decedent's estate is solvent. Id. at 622. Whether Bandy's second proposition — that a debtor is not insolvent, as to a creditor, if that creditor is oversecured — applies beyond the narrow factual circumstances of that case or the 19th century Texas precedent from which it derived is a question we need not resolve.

[17] Under Texas law, conversion is defined as "the wrongful exercise of dominion and control over another's property in denial of or inconsistent with his rights." Bandy, 835 S.W.2d at 622 (quoting Tripp Village Joint Venture v. MBank Lincoln Centre, N.A., 774 S.W.2d 746, 750 (Tex. Civ. App.--Dallas 1989) (writ denied)); see also Estate of Townes v. Townes, 867 S.W.2d 414, 4119-20 (Tex. App.--Houston [14th Dist..] 1993) (writ denied) (an action for conversion of money will lie when the money is, inter alia, "not the subject of a title claim by the keeper") (citation omitted).

[18] This part of our opinion is not intended to preclude a Texas court, once this avoidance action is final, from interpreting Texas garnishment law in the event that Aquila should prosecute any state court action arising from Banque Paribas' setoff.

16

that has the potential of enabling Aquila to receive more than it would have had the writ not been served; (2) has retained value to Aquila because Banque Paribas' setoff was putatively void or improper under Texas law; and (3) is therefore subject to avoidance as a preference under § 547(b).[19]

Predictably, the Trustee's inconsistent alternative argument on this issue, replicated by Banque Paribas in its amicus argument to this court, takes as its premise the opposite view of the propriety of Banque Paribas' setoff and reasons that if the setoff was proper, rendering Aquila's garnishment writ valueless, then Aquila has no basis on which to assert a secured claim against the debtor's bankruptcy estate or a conversion claim against Banque Paribas in state court. In short, if the setoff was proper, concludes the Trustee, then Aquila is left in the same position in which it would find itself if the setoff were void — it would have only an unsecured claim against the estate for the garnished amount. We fail to discern a flaw in this reasoning and therefore find the Trustee's argument compelling.

## C. Benefit to the Estate under § 550(a)

Both the bankruptcy and district courts recognized that for the Trustee to prevail in this preference avoidance action he had to demonstrate not only that service of the garnishment writ created a security interest that qualified as an avoidable

---

[19] See supra note 14.

17

preference under §547(b), but also that avoiding the writ would result in a recovery "for the benefit of the estate" under § 550(a),[20] that is, a recovery "for the benefit of all unsecured creditors."[21] The district court expressly rejected the Trustee's textual and structural arguments that § 550(a)'s "benefit to the estate" requirement has no nexus with or bearing on a trustee's independent avoidance powers when an avoidance action under § 547 is not coupled with an affirmative attempt under the aegis of § 550(a) to recover "property transferred" or "the value of such property," but instead simply seeks to avoid a non-possessory judicial lien. Although we agree with the district court's thoughtful explanation of why the "benefit of the estate" test still must be met in a §547 avoidance action like the one before us,[22] we conclude that here such statutory construction dispute is

---

[20] 11 U.S.C. § 550(a) provides:
   Except as otherwise provided in this section, to the extent that a transfer is avoided under section . . . 547 . . . the trustee may recover, <u>for the benefit of the estate</u>, the property transferred, or, if the court so orders, the value of such property from——
      (1) the initial transferee of such transfer or the entity for whose benefit such transferee was made, or;
      (2) any immediate or mediate transferee of such initial transferee (emphasis added).

[21] 5 <u>Collier on Bankruptcy</u> (Lawrence P. King ed.) ¶ 550.02[2], at 550-6 (15th ed. Rev. 1997).

[22] The district court reasoned that (1) Congress' enactment of separate avoidance and recovery sections in the Bankruptcy Code, as opposed to the Bankruptcy Act, did not overrule bankruptcy law's longstanding refusal to allow a debtor to avoid a lien, including a garnishment lien, when only the debtor, and not the general

18

entirely academic because in this instance the avoidance of Aquila's garnishment writ will in fact result in a meaningful benefit to the estate, i.e. to the unsecured creditors.

The district court reversed the bankruptcy court's finding that the avoidance action does not benefit the estate for two reasons: (1) The bankruptcy court's own approval of the Plan, which obligated the Trustee to prosecute this avoidance action, indicates the presence of some benefit to the estate in the successful avoidance of the garnishment writ; and (2) successful prosecution of the avoidance action could save the estate up to $200,000 in attorneys' fees that Banque Paribas might incur in defending a state court action brought by Aquila based on the bank's setoff. Although we agree with the district court's conclusion that the benefit to the estate test was satisfied, we do so for a reason that is different and (we believe) more compelling, and that is independently supported by the record.[23]

First, we are not comfortable with the simplistic conclusion

_____

creditors, benefits, and (2) the Trustee's action to avoid the garnishment lien is still an attempt to <u>recover "property"</u> under § 550(a) because (a) what the Trustee in fact seeks to recover is a security interest and (b) a security interest is a property interest under Texas law. <u>Id.</u> at 954-55.

[23] <u>See Ballard v. United States</u>, 17 F.3d 116, 118 (5th Cir. 1994) (Court of Appeals may affirm decision district court entered after bench trial on grounds other than those relied on by district court); <u>Chauvin v. Tandy Corp.</u>, 984 F.2d 695, 697 (5th Cir. 1993) (Court of Appeals may affirm on grounds other than those relied upon by district court when the record contains adequate and independent basis for that result).

that the bankruptcy court's in globo approval of the Plan as beneficial necessarily demonstrates that each provision of the Plan is independently beneficial to the estate; neither are we comfortable with the conclusion that in an eight-figure bankruptcy a somewhat manufactured potential savings of not more than $200,000 can have any salutary benefit. Rather, the real benefit that the Trustee's avoidance of the garnishment writ bestows on the unsecured creditors in this case arises from the fact that Banque Paribas was oversecured at the time the debtor's bankruptcy petition was filed and at the time of the bank's setoff as well. When a primary secured creditor like Banque Paribas is in fact oversecured on its own claims against the debtor, the excess collateral securing that primary creditor's claims is available for distribution among the general unsecured creditors. Consequently, if Aquila were permitted to preserve its otherwise preferential garnishment writ, thereby allowing Aquila to obtain a secured claim in the portion of Banque Paribas' collateral that exceeds its secured claim, the amount of such excess funds available for distribution among unsecured creditors would be diminished, dollar for dollar, by the amount recovered by Aquila through its garnishment. Thus, if Banque Paribas were oversecured, avoidance of the garnishment clearly would benefit the estate. Conversely, if Banque Paribas were undersecured, a successful defense by Aquila of the Trustee's avoidance action would make no difference to the remaining unsecured creditors. This is so because all of the

20

assets encumbered by security interests of Banque Paribas would go either entirely to the bank or partially to the bank and partially to Aquila, but none to the estate or the unsecured creditors; and either Aquila or Banque Paribas — but not both — would ultimately have and assert the $1.83 million claim as an unsecured claim. In short, failure to avoid the garnishment in an undersecured situation would merely (1) shift a portion of Banque Paribas' already inadequate security to Aquila, (2) increase the gap between Banque Paribas' claim and the amount of secured assets available to satisfy that claim, and (3) shift Aquila's originally unsecured $1.83 million claim to Banque Paribas. Although this would produce changes in security and debt satisfaction between these two creditors, it would neither increase nor decrease the quantum of funds available for distribution to the other unsecured creditors. As the evidence in this case clearly shows that Banque Paribas was oversecured by millions of dollars both at the time of the bankruptcy petition and at the time of its setoff,[24] we must conclude that the trustee's avoidance of the lien created by the garnishment writ would redound to "the benefit of the estate" within the meaning of §550(a).

## D.    Additional Issues

---

[24] According to the Trustee, the excess value of the collateral securing the bank's claims over the amount of the claims themselves was approximately $15.3 million on the date of the bankruptcy petition. According to the bankruptcy court's findings, the amount of excess collateral was even greater, approximately $26 million, on the date of Banque Paribas' setoff.

21

Aquila has advanced two more contentions in this appeal: (1) The district court impermissibly refused to dissolve or modify the injunction preventing Aquila from pursuing Banque Paribas, and (2) the district court improperly denied Aquila's request for a jury trial. With regard to the first additional issue, we are satisfied that any question about the propriety of the injunction imposed under the Plan is now moot in light of our resolution of the Trustee's avoidance action. This is so because the injunction will henceforth be lifted, enabling Aquila to proceed in state court with any state law claim that remains viable.

With regard to the second additional issue — Aquila's assertion that it was entitled to a jury trial in this action — we conclude that Aquila's position is unmeritorious. A litigant has a right to a jury trial only if the cause of action is legal in nature, not equitable, and involves a matter of private right.[25] Thus, when a bankruptcy creditor files a proof of claim, it submits itself to the bankruptcy court's equitable powers and thereby waives its right to a jury trial.[26] Here, Aquila filed a proof of claim in the TMHI bankruptcy and was denied a jury trial in this resulting avoidance action. Aquila's contention that this case does not involve an issue of claim allowance or disallowance

---

[25] Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 40-47, 109 S.Ct. 2782, 2790-93, 106 L.Ed.2d 26 (1989).

[26] Lagenkamp v. Culp, 498 U.S. 42, 44, 111 S.Ct. 330, 331, 112 L.Ed.2d 343 (1990).

ignores the fact that this avoidance action has the effect of disallowing Aquila's $1.83 million secured claim. Consequently, the district court did not err in rejecting Aquila's argument that the bankruptcy court should have granted it a jury trial in the instant avoidance action.

## III

## CONCLUSION

Our affirmance today of the district's decision does not mean that we agree with all of its reasoning. We have, for example, found that the Trustee's avoidance action results in a benefit to the estate under §550(a) for reasons different from those espoused by the district court. With regard to whether Aquila's garnishment writ constituted an avoidable preference under § 547(b), our reasoning hinges on the fact that, in the peculiar circumstances of this case, Aquila was bound to see its garnishment writ avoided as a pre-petition preferential transfer or, if not avoided, at least rendered incapable of producing a secured claim against the debtor's estate, due to Banque Paribas' pre-petition setoff. Consequently, our holdings are narrowly limited to the unusual combination of facts peculiar to this case. This said, we hold that the Trustee may avoid Aquila's garnishment writ as a preferential transfer under §547(b) and find that this avoidance benefits the estate within the meaning of §550(a). For these reasons, the district court's decision reversing the bankruptcy

23

court and rendering judgment for the Trustee is, in all respects,

AFFIRMED.